704 A.2d 464

## In re CRIMINAL INVESTIGATION NO. 51,843 IN the CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY.

No. 509, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Jan. 9, 1998.

Andrew H. Baida, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kathleen Hoke Dachille, Asst. Atty. Gen., Baltimore, Barbara L. Holtz, Acting County Atty., Sean D. Wallace, Deputy County Atty. and Laura Gwinn, Associate County Atty., Upper Marlboro, on the brief), for Appellants.

Kenneth E. McPherson, Riverdale (Rebecca Brennan Branzell, Washington, DC, on the brief), for appellee, Randall.

Terrell N. Roberts, III, Christopher Griffiths and Roberts & Wood, Riverdale, on the brief, for appellee, Gilbert.

Argued before MURPHY, C.J., HARRELL, J., and ROSALYN B. BELL, Judge (retired), Specially Assigned.

HARRELL, Judge.

On 9 December 1996 appellees Jeffrey Gilbert ("Gilbert"), David Randall, Eddie Jones, Dana Williams, Jermaine May-hew, Carlos Marshall, Yolanda Hamlet, Jason Mobley, Steve McAbee, Jerry Swint, Eloise Jones, Tamara Marshall, Jerry Vance, and John Williams (the latter referred to collectively hereinafter as the "Randall appellees") filed motions in the Circuit Court for Prince George's County, pursuant to Mary-land Rule 4–642(c), seeking the disclosure of all testimony and evidence presented to Grand Jury Number 51,843, which had been convened to investigate the shooting death of Prince George's County Police Officer John Novabilski. The court held a hearing on the motions on 26 February 1997. On 27 February 1997 the court ordered the State's Attorney for Prince George's County to disclose the transcript of testimony of all witnesses testifying before that grand jury. The State of Maryland and Prince George's County, Maryland ("the County") then filed this timely appeal.

## ISSUE

One issue is presented for our consideration, which we have rephrased:

Did the trial court abuse its discretion in ordering the disclosure of all the grand jury testimony?

## FACTS

On 26 April 1995, Prince George's County Police Officer John Novabilski was murdered. Within a day of the murder, the Randall appellees were arrested, transported to a police station, and questioned about appellee Gilbert's role in Sgt. Novabilski's death. After Mr. Gilbert's arrest, the Randall

appellees were released. Shortly thereafter, Grand Jury Number 51,843 was convened to review the evidence and consider an indictment against Mr. Gilbert. On 2 June 1995, however, the police dropped all charges against Mr. Gilbert when evidence was discovered that Ralph McLean committed Sgt. Novabilski's murder.

Mr. Gilbert filed a civil action against several individual police officers, the County, and the City of Greenbelt, alleging that his federal and state constitutional rights had been violated because the police lacked probable cause to arrest him and used excessive force during the arrest. The Randall appellees also filed a civil action alleging civil rights violations. Both actions are now pending in the United States District Court for the District of Maryland, Southern Division. At the time the instant case was before the circuit court, Mr. Gilbert's civil damages suit had been stayed pending resolution of a federal criminal investigation, and no discovery had been conducted. Discovery in the Randall appellees' federal case had just begun.

At the motions hearing on 26 February 1997 the Randall appellees sought disclosure of all the grand jury transcripts, arguing that the disclosure of the grand jury testimony was essential to their civil claims. Access to the grand jury testimony, they asserted, would enable them to learn material facts relevant to their civil claims, was the most reliable evidence available as to what occurred in April 1995, and was necessary to identify the police officers involved. Appellee Gilbert added that the grand jury testimony would show that he was arrested without probable cause and that the need for the grand jury testimony was heightened because memories of witnesses would fade due to the amount of time that had passed since the incident.

The State and County argued that appellees were on a fishing expedition, that they had not demonstrated a particularized need for disclosure, and that their motion to disclose was premature given the status of the civil cases.

After considering the arguments for and against disclosure, the trial court took the matter under advisement and, the following day, 27 February, ordered the State to disclose the transcript of testimony of all witnesses who appeared before the grand jury.

## DISCUSSION

Secrecy of grand jury proceedings is essential to the proper functioning of the criminal justice system. *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). Preserving grand jury secrecy serves several purposes:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*In re Criminal Investigation No. 437,* 316 Md. 66, 76–77, 557 A.2d 235 (1989) (quoting *Douglas Oil,* 441 U.S. at 219, 99 S.Ct. at 1673).

Sometimes, however, disclosure of grand jury materials will promote justice. *In re Criminal Investigation No. 437,* 316 Md. at 79, 557 A.2d 235 (citing *Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966)). The Maryland Rules provide for disclosure of grand jury materials when necessary. Maryland Rule 4–642 states:

> (a) Court Records.—Files and records of the court pertaining to criminal investigations shall be sealed and shall be open to inspection only by order of the court.

(c) Motion for Disclosure.—Unless disclosure of matters occurring before the grand jury is permitted by law without court authorization, a motion for disclosure of such matters shall be filed in the circuit court where a grand jury convened. . . . [T]he moving party shall serve a copy of the motion upon the State's Attorney, the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding, and such other persons as the court may direct. The court shall conduct a hearing if requested within 15 days after service of the motion.

■ Thus, to obtain grand jury materials, the court must order the disclosure. Rule 4–642, however, does not offer or suggest a standard for the trial court to follow when deciding to issue a disclosure order. *In re Criminal Investigation No. 437*, 316 Md. at 81, 557 A.2d 235. The Court of Appeals has filled this void by holding that "when a court order for disclosure is requested, there must be a strong showing of a 'particularized need' before disclosure is permitted." *Id.* at 82, 557 A.2d 235. *See also United States v. John Doe, Inc. I*, 481 U.S. 102, 112, 107 S.Ct. 1656, 1662, 95 L.Ed.2d 94 (1987); *United States v. Sells Engineering*, 463 U.S. 418, 443–445, 103 S.Ct. 3133, 3148–3149, 77 L.Ed.2d 743 (1983); *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 567, 103 S.Ct. 1356, 1361, 75 L.Ed.2d 281 (1983); *Douglas Oil*, 441 U.S. at 221, 99 S.Ct. at 1674; *Dennis*, 384 U.S. at 870, 86 S.Ct. at 1849; *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959); *United States v. Procter & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958).

■ The Court of Appeals has also provided the standard movants must meet in order for the court to order disclosure of grand jury material:

Parties seeking a court order for disclosure under Md. Rule 4–642(c) must show that:

1) the material they seek is needed to avoid a possible injustice; and

2) the need for disclosure is greater than the need for continued secrecy; and

3) their request is structured to cover only material so needed.

*In re Criminal Investigation No. 437,* 316 Md. at 85, 557 A.2d 235.

■ This showing of particularized need must be made even when the grand jury has concluded. *Id.* at 85, 557 A.2d 235 (citing *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674). Although reduced, the considerations supporting grand jury secrecy do not disappear the moment the grand jury concludes:

"For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. Concern as to the future consequences of frank and full testimony is heightened where the witness is an employee of a company under investigation. Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities."

*In re Criminal Investigation No. 437,* 316 Md. at 85–86, 557 A.2d 235 (quoting *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674)

■ Because " 'disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy,' a balancing is invoked." *In re Criminal Investigation No. 437,* 316 Md. at 86, 557 A.2d 235 (quoting *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675). The burden of demonstrating that the need for disclosure outweighs the public interest in secrecy is on the party seeking disclosure. As the reasons for preserving grand jury become less weighty, the party seeking

disclosure will have a lesser burden in showing need. *In re Criminal Investigation No. 437*, 316 Md. at 86, 557 A.2d 235 (citing *Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1675). Thus, the trial court must consider the circumstances of each case in balancing the interests and deciding whether to order disclosure.

█ The trial court has wide discretion in deciding whether the party seeking disclosure has met the burden of demonstrating that the need for disclosure outweighs the need for secrecy. *In re Criminal Investigation No. 437*, 316 Md. at 88–89, 557 A.2d 235 (citing *Pittsburgh Plate Glass*, 360 U.S. at 399, 79 S.Ct. at 1240). As the Court of Appeals noted, "a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." *In re Criminal Investigation No. 437*, 316 Md. at 89, 557 A.2d 235 (citing *Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1675).

Appellate courts define the term "abuse of discretion" in many different ways:

> [Abuse of discretion] has been said to occur "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding rules or principles." It has also been said to exist when the ruling under consideration "appears to have been made on untenable grounds," when the ruling is "clearly against the logic and effect of facts and inferences before the court," when the ruling is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result," when the ruling is "violative of fact and logic," or when it constitutes an "untenable judicial act that defies reason and works and injustice."

*North v. North*, 102 Md.App. 1, 13–14, 648 A.2d 1025 (1994) (citations omitted). These definitions all "express the notion that a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling." *Id.* at 14, 648 A.2d 1025.

■ We must evaluate the trial court's decision " 'from the standpoint of the soundness of the exercise of discretion.' " *Thodos v. Bland,* 75 Md.App. 700, 712, 542 A.2d 1307 (1988) (quoting *Ogburn v. State,* 71 Md.App. 496, 509, 526 A.2d 614 (1987)). This means that

> when the consequences of a particular exercise of discretion are clear, i.e., one result is clearly unjust and the other, clearly not, the limits of the exercise of discretion are narrow. On the other hand, when the consequences are not so clear, i.e., no result is clearly just or unjust, the limits of the exercise of discretion are considerably broader. Indeed, in the latter situation, we will not find an abuse of discretion whichever way the trial court may choose to exercise discretion.

*Id.* at 712, 542 A.2d 1307 (citing *Ogburn,* 71 Md.App. at 510, 526 A.2d 614). We now apply these standards to the issue before the Court.

Appellants argue that the trial court abused its discretion in ordering disclosure of the grand jury testimony because appellees failed to show that a particularized need existed. As the Court of Appeals stated in *In re Criminal Investigation No. 437:*

> In the light of all we have discussed concerning the grand jury process, we approach the determination whether the trial court erred in ordering disclosure and authorizing the letter of transmittal with the following givens:

> 1) Secrecy is inherent in the grand jury system.

> 2) The general rule of secrecy may be breached by an order of court pursuant to Md. Rule 4–642(c).

> 3) Disclosure of grand jury proceedings *vel non* is within the sound discretion of the trial judge.

> The trial judge is to be guided by the following principles in the exercise of his discretion:

> a) The party seeking disclosure by an order of court must show a particularized need for breaching the general rule of secrecy.

b) The standard for the particularized need requirement is:

i) the material sought to be disclosed is needed to avoid a possible injustice; and

ii) the need for disclosure is greater than the need for continued secrecy; and

iii) the request to disclose covers only materials so needed.

The standard for the particularized need requirement involves a balancing. The standard is a criterion of degree; it accommodates any relevant considerations that weigh for or against disclosure in a given case. Generally, among the considerations which may be placed on the scale are

1) the need to protect the unindicted individual from disclosure;

2) the grand jury has concluded its operations;

3) the particularized need requirement applies to civil governmental agencies as well as to private parties;

4) the materials sought for disclosure are rationally related to the civil proceedings contemplated;

5) the materials sought may be available through ordinary discovery or other routine avenues of investigation;

6) disclosure will save time and expense;

7) no indictments were returned as a result of the grand jury's investigation.

None of these considerations, in itself, is usually sufficient to show that there is or is not a particularized need for disclosure. But each consideration, balanced with other considerations, may weigh for or against disclosure. The weight afforded by the consideration depends upon the particular circumstances. The bottom line is that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy.

*In re Criminal Investigation No. 437*, 316 Md. at 100–101, 557 A.2d 235.

Before evaluating the correctness of the trial court's acceptance of the proposition that appellees met their burden of demonstrating a particularized need, we must first consider the weight of the need for secrecy in this case. As we noted *supra*, when the considerations justifying secrecy become less relevant, a party asserting the need for access to grand jury transcripts will have a lesser burden to overcome.

■ Here, the accepted reasons for giving weight to the interest in maintaining secrecy are diminished. First, it is said that if grand jury material is disclosed, the possibility exists that such a tradition may, at some future time, inhibit a prospective witness before a future grand jury from testifying for fear of retribution or social stigma. That concern retains weight in the instant case. The other factors favoring maintenance of secrecy, however, carry little weight in the instant case. The actual witnesses before this grand jury are less likely to be susceptible to retribution or influence as the grand jury concluded two years ago without indicting anyone. There is no risk that the accused (Mr. Gilbert) will flee or try to influence the grand jury for the same reason. Finally, there is no concern that Mr. Gilbert, who was investigated but uncharged by the grand jury, will be exposed to public scrutiny. Mr. Gilbert himself wants the transcripts disclosed. Thus, because the need for secrecy was minimal, appellees' burden was less onerous.

We now consider whether the trial court abused its discretion in finding that appellees met their burden of demonstrating a particularized need for disclosure of the grand jury materials. Before addressing the three-pronged particularized need test, we examine the "considerations which may be placed on the scale" when a trial court considers the particular circumstances of the case. *In re Criminal Investigation No. 437*, 316 Md. at 100, 557 A.2d 235.

First, in the case sub judice, there was no need to protect the unindicted individual from disclosure. Not only is he one of the parties requesting disclosure, but also his identity as a suspect and as a potential victim of police brutality was

broadcast by the news media, thereby disclosing his identity to at least the entire Washington metropolitan area.

Second, the grand jury has concluded its operations. There is no possibility of influencing the grand jury because the jurors have been dismissed. Furthermore, appellees are not requesting disclosure of the names of the grand jurors, thereby negating any fear the grand jurors may have regarding retaliation or pressure.

The third factor, application to government agencies, is not at issue here as a government agency is not the requesting party.

Fourth, appellees adequately demonstrated that the materials in this case may be rationally related to the civil proceedings. Appellees asserted that the grand jury testimony may shed light on their claim that the conduct of the police violated their civil rights. Mr. Gilbert further argued that the grand jury testimony will demonstrate that the police had no probable cause to arrest him.

■ The fifth factor, whether the materials would be available through discovery, is still an unknown. Because discovery in appellees' civil damages cases was "in its infancy," appellees could not demonstrate that the materials would not be available absent disclosure of the grand jury testimony. Even if we assume that all of the requested materials could be obtained through discovery, there is no per se rule against disclosure. *See John Doe, Inc. I*, 481 U.S. at 116, 107 S.Ct. at 1664.

As to the sixth factor, disclosure certainly may save time and expense, at least as viewed at the time of the circuit court's consideration here. Armed with the grand jury material, appellees would be able to conduct depositions and gather evidence more efficiently.

Finally, regarding the seventh factor, no indictments were returned as a result of the grand jury's investigation.

Once the trial court placed these considerations on the scale, it then had to determine from them if appellees met the three-

pronged particularized need test. First, appellees argued that the material was needed to avoid a possible injustice because without the grand jury transcripts, appellees would not be able to identify any police officers who testified or find evidence showing an officer's state of mind at the time of the arrest. To be sure, it was not apparent on the record before the trial judge whether police officers testified before the grand jury at all. In addition, appellees claimed that the grand jury transcripts would assist them in learning material facts about their civil case and would be substantive evidence at trial. Without the grand jury testimony, which appellees claim would be the most reliable and accurate evidence of what occurred in April 1995, appellees argue that their civil claims will be severely damaged.

Appellees also mounted an argument that the need for disclosure was greater than the need for continued secrecy. Because the societal interest in grand jury secrecy carried little weight in this case, appellees did not have as heavy a burden to meet. Appellees showed that the materials might be relevant to their civil case, might not be available through discovery, that disclosure would save time and expense, and that considerations regarding grand jury tampering and protection of the unindicted individual do not apply. The trial court, therefore, rationally could have found that appellees tipped the scales towards disclosure.

The final factor concerns whether the request for disclosure covered only materials actually needed. Appellees requested *all* testimony and evidence before the grand jury. Because discovery had barely begun at the time appellees filed their motion, they professed not to know who testified before or what materials were presented to the grand jury. There was assertedly no way, at that time, to limit their request to specific testimony or evidence. Because of appellees' lack of information when they requested disclosure, the trial court could have concluded that their request covered necessary material. While appellees' arguments in this regard appear thin and of middling persuasive weight (an issue we will return to *infra* when we discuss the relief granted), we cannot say it

was so diluted as to vitiate the trial court's threshold decision whether to order some measure of disclosure.

■ After reviewing the facts of the case in light of these considerations, we conclude that there were sufficient bases for the trial court to have found that appellees met the three prongs of the standard to establish a particularized need for disclosure. The trial court has substantial discretion in deciding which way the scales tip, and although we may have reached a different result, it is not our role to place ourselves in the trial court's shoes. Thus, it was in the trial court's range of discretion at the time it exercised it to grant some form of access to the grand jury materials.

We part with the trial court, however, in how it elected to grant relief to appellees. Granting access to *all* the grand jury testimony, under the circumstances, is an antithetical response to the particularized need test. As the Supreme Court stated, "it has been recognized that in some situations justice may demand that *discrete* portions of transcripts be made available for use in subsequent proceedings." *Douglas Oil*, 441 U.S. at 219–220, 99 S.Ct. at 1673 (emphasis added). The party seeking disclosure must meet a "particularized need" standard so that "the secrecy of the proceedings [may] be lifted *discretely* and *limitedly*." *Procter & Gamble Co.*, 356 U.S. at 683, 78 S.Ct. at 987 (emphasis added).

The wholesale disclosure ordered in this case contrasts sharply with the order upheld in *In re Criminal Investigation No. 437*. In that case, 12 banker's boxes full of material were submitted to the grand jury, but only 112 documents were requested. The trial court found, and the Court of Appeals agreed, that "grand jury secrecy would not be compromised by disclosing these documents as they are an infinitesimal part of the total submissions in response to the total grand jury subpoenas." *In re Criminal Investigation No. 437*, 316 Md. at 89–90, 557 A.2d 235. The Supreme Court upheld a similarly narrow disclosure order in *John Doe, Inc. I*, finding that "the disclosure of a summary of a portion of the grand jury record to named attorneys for purposes of consultation does

not pose the same risk of a wide breach of grand jury secrecy as would allowing unlimited use of the material to all attorneys." *John Doe, Inc. I,* 481 U.S. at 114, 107 S.Ct. at 1663.

The "model" narrow disclosure orders upheld in *In re Criminal Investigation No. 437* and *John Doe, Inc. I* differ significantly from the order the circuit court entered in this case, in large part explained by the fact that the moving parties in those cases sought specific grand jury materials rather than full disclosure. The Supreme Court rejected the "all-encompassing, unparticularized general type of full disclosure" requested by the moving party in *Illinois v. Abbott & Associates, Inc.* after "having done little more than filing a suit." *Abbott & Associates, Inc.,* 460 U.S. at 564 n. 8, 103 S.Ct. at 1360 n. 8. Such full disclosure "would defeat the spirit and rule of *Procter & Gamble* and *Douglas Oil.*" *Id.* Here, too, the trial court's broad disclosure order seems to us to violate the spirit of the particularized need test.

In the case at hand, neither Mr. Gilbert nor the Randall appellees had conducted any significant discovery in their federal suits. Appellees did not know who testified before the grand jury or what evidence was presented. The attorneys representing the State and County at the circuit court hearing on the motions likewise did not know who testified before the grand jury. From the record, it appears that the trial court did not have an opportunity to review the grand jury testimony *in camera* to determine who testified, the subject of the testimony, or its potential relevance to appellees' civil claims. Thus, as in *Douglas Oil,* the trial court here "based its decision largely upon the unsupported assertions of counsel during oral argument before it." *Douglas Oil,* 441 U.S. at 229, 99 S.Ct. at 1678. Even the assertions of counsel seemed to indicate that a thorough review of the grand jury materials or a delay in ordering the disclosure would be helpful to the trial court in deciding which discrete portions to disclose. As counsel for the Randall appellees stated,

> I am willing at this point to settle if we can get a list of what documents were introduced, and who they were authored by, and we can get a list of what you just described as well

[transcripts]. Then we can go through and narrow down what it is that should be disclosed up front. And then if there's—we can make a showing of need for those others, then we can do that.

Counsel for Mr. Gilbert stated, "Now if you don't grant the motion now, at least it ought to be reserved until after we have a chance to go through some discovery in the civil case."

The County's attorney responded that counsel for the Randall appellees

has conceded it is premature to even ask [the court] to do anything today. . . . I don't think ultimately they are going to need any of this if they conduct proper discovery.

But assuming they can come back to you at a later date and in good faith say we know that Officer Jones testified before the Grand Jury and we proffer to you that his testimony concern[s] X, Y and Z, at that point I would think the case law in Maryland would make it accessible to them.

 Although the trial court properly exercised its broad discretion in determining whether the requesting party had met the burden of showing a particularized need, it should have framed its order more narrowly in light of the goals of the particularized need test. Simply ordering full disclosure without any apparent judicial overview of the grand jury material was error.

Thus, we return the case to the trial court for a more particularized review, including, but not limited to, an *in camera* review of the grand jury materials. At the time of the motions hearing, appellees were not specific in their request because apparently they could not be. Presumably, discovery has been conducted to a greater extent in one or both of the civil cases. Appellees should be in a better position to state with specificity what they need of the grand jury testimony, the State and County are in a better position to respond, and the court is in a better position to tailor narrowly the appropriate relief.

AFFIRMED IN PART; REVERSED IN PART; ORDER OF 27 FEBRUARY 1997 OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED BY PRINCE GEORGE'S COUNTY (1/4), STATE OF MARYLAND (1/4), APPELLEE GILBERT (1/4), AND THE RANDALL APPELLEES (1/4).